**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>vs.<br><br>MARCUS MATTINGLY,<br><br>         Defendant. | 2:21-cr-00230-APG-VCF<br><br>**Report and Recommendation**<br><br>MOTION TO SUPPRESS [ECF NO. 30];<br>MOTION TO SUPPRESS FRUITS OF<br>FACEBOOK WARRANT (EVIDENTIARY<br>HEARING REQUESTED) [ECF NO. 34] |

     Defendant  Marcus Mattingly filed two motions to suppress. ECF Nos. 30 and 34. I held an evidentiary hearing. ECF No. 49. I recommend denying the motions to suppress. ECF Nos. 30 and 34.

**I.    Background**

    **a.  First Motion to Suppress**

     On August 17, 2021, a grand jury returned an indictment charging Mattingly with felon in possession of a firearm in violation of Title 18, United States Code, Sections 922(g)(1) and 924 (a)(2). ECF No. 22. Mattingly argues in his first motion to suppress that the police lacked probable cause to do a "parole search" of the hotel room he was staying in, that was checked out to a woman named Charli Hughes, and where officers found a black handgun underneath a mattress. ECF No. 30 at 9. Defendant

1

argues that the subsequent search warrant lacked probable cause because it wrongfully relied on the invocation of his parole search condition to search underneath the mattress. *Id.*

The government argues that searching Mattingly's hotel room was lawful because even though the hotel room was checked out to Hughes, the hotel room was under his control since he was staying there. ECF No. 31 at 1. The government argues that the terms of Mattingly's parole included a clause that any area under his control could be searched at any time. *Id.* The government also points out that the parole officer who accompanied the detective invoked the search clause in Mattingly's parole agreement and the parole officer found the gun. *Id.* The government argues that the subsequent search warrant is valid and the search of Mattingly's hotel room was lawful under the conditions of Mattingly's parole. *Id.* at 7. The government also argues that if the hotel room is *not* under defendant's control, then he does not have standing to challenge the search. *Id.*

The defendant argues in its reply that Mr. Mattingly did not have sufficient control over the hotel room to bring it within the purview of his parole search clause. ECF No. 32 at 2. The defendant argues that an overnight guest would have a reasonable expectation of privacy in the room and thus have standing to challenge the search. *Id.* at 5.

**b. Second Motion to Suppress**

Defendant states in his second motion to suppress that on February 6, 2020, the Nevada Department of Corrections issued a parole violation for him based on use of controlled substances, failures to report, and alleged absconder status. ECF No. 34. He alleges that Henderson Police Department Detective Redsull applied for, and was granted, a search warrant for Mattingly's Facebook account. ECF No. 34. Defendant argues that the Facebook search warrant lacked sufficient probable cause and was overbroad. *Id.*

The government argues that Mattingly was the subject of an arrest warrant for violating the conditions of his parole. ECF No. 41 at 1. The government argues that local police also had probable

cause to arrest Mattingly for a stabbing that occurred in Henderson. *Id.* The government argues that the search warrant contained sufficient probable cause demonstrating the Facebook account belonged to Mattingly and a fair probability that evidence would be found there. *Id.* The government also argues that the search warrant was not overbroad because it specified a particular crime for which evidence was sought and had a temporal limit. *Id.* at 2.

The defendant argues that Detective Redsull's affidavit to obtain the search warrant was devoid of any facts that would support probable cause. ECF No. 42 at 1. Mattingly argues that the affidavit did not show that he was actively using his Facebook account. *Id.* at 3. The defendant also argues that the affidavit was overbroad because it sought communications within the temporal limit. *Id.*

### c.  The Evidentiary Hearing

The government called Detective Redsull and Parole Officer Eric Chandler as witnesses at the evidentiary hearing. ECF No. 49. Detective Redsull testified that as a result of the Facebook search warrant, he learned of IP addresses that showed that someone logged into the Mattingly Facebook account from the Cancun hotel. Detective Redsull testified that on April 1, 2020, he contacted management at the Cancun hotel to see if Mattingly had a room there, and he did not. Resdull testified that since it was the beginning of the Covid-19 pandemic, the hotel had few guests due to the shutdowns and cancelations. Redsull testified that he looked through the registrations to see if he recognized any names and he recognized one: Charli Hughes. He testified that he knew that Hughes was associated with Redsull, likely because of Facebook, but he could not recall exactly how her name came up in the investigation. He also testified that, based on his knowledge and experience, fugitives usually do not put hotel rooms in their names.

Detective Redsull testified that he learned that Hughes checked in on March 29, 2020, so he started looking at surveillance video around the time of check-in. Redsull testified he saw Mattingly, Hughes, and another woman, get in the elevator to go up to the floor where the hotel room at issue is

located. He also testified that he took still shots of the surveillance footage, but he did not download it at the time because he was there to locate the fugitive. Detective Redsull testified that he started doing surveillance on the hotel room and he saw Mattingly on the hotel room balcony on April 1, 2020. Detective Redsull went back the next day, on April 2, 2020, and he saw Mattingly on the same balcony again in the morning.

Parole Officer Chandler testified that he relied on Detective Redsull's representation that Mattingly was at the Cancun hotel. Parole Officer Chandler went to the hotel for the first time on April 2, 2020. Both Detective Redsull and Officer Chandler testified that the hotel had a living room, a master bedroom, and a spare bedroom. Both officers testified that when the SWAT team entered the premises, Mattingly was in the spare room and the door to the spare room was locked. The officers also both testified that when Mattingly realized that the swat team was outside he came out of the spare room and he was taken into custody. Both Detective Redsull and Officer Chandler testified that they saw male clothing in the spare room, and Mattingly was the only male there.

Officer Chandler testified that he relied on the parole agreement to search the room. Officer Chandler testified that he searched the spare bedroom that Mattingly had locked himself in. Officer Chandler found a bag with Mattingly's wallet and ID. Officer Chandler located a firearm between the box spring and the mattress in the bed that was in the spare room.

## II.    Discussion

The Fourth Amendment confers the right for people to "be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…" U.S. Const. amend. IV.  To protect this right, under normal circumstances, law enforcement must procure a search warrant before they are able to legally invade the privacy of another. *Steele v. United States*, 267 U.S. 498 (1925).  For a search warrant to be valid, it must be supported by an affidavit establishing probable cause. *United States v. Mayer*, 560 F.3d 948, 958 (9th Cir. 2009). The United States Supreme Court created the exclusionary

rule as "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231–32 (2011).

"A state has an 'overwhelming interest' in supervising parolees because 'parolees are more likely to commit future criminal offenses'…Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 852 (2006) quoting *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357 (1998). "[P]arolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment." *Id.* at 850. "[A] suspicionless search of a parolee…when conducted in accordance with the 'clear and unambiguous' terms of a lawfully imposed search condition, will generally be deemed reasonable under the Fourth Amendment." *Cervantes*, 859 F.3d at 1183 (quoting *Samson v. California*, 547 U.S. 843, 852-54 (2006)).

"A hotel room is not ordinarily a residence… [the] question is whether the room was under [the defendant's] control." *United States v. Cervantes*, 859 F.3d 1175, 1182 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2017). "A search of a parolee that complies with the terms of a valid search condition will usually be deemed reasonable under the Fourth Amendment." *Id.* at 1183. "The search condition validates a search only if the police had advance knowledge that the search condition applied before they conducted the search." *United States v. Caseres*, 533 F.3d 1064, 1076 (9th Cir. 2008).

"An overnight guest has a legitimate expectation of privacy in his host's home[.]" *Minnesota v. Olson*, 495 U.S. 91, 98 (1990); see also *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (making important distinction between overnight guests and casual guests, holding that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is

merely present with the consent of the householder may not"); and *United States v. Grandberry*, 730
F.3d 968 (9th Cir. 2013) ("Parolee had standing to assert that search of girlfriend's apartment violated
the Fourth Amendment by virtue of his status as overnight guest there.")

"An affidavit in support of a search warrant demonstrates probable cause if, under the totality of
the circumstances, it reveals a fair probability that … evidence of a crime will be found in a particular
place." *United States v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003) citing *Illinois v. Gates*, 462 U.S.
213, 238 (1983). "The validity of a search warrant depends upon the sufficiency of what is found within
the four corners of the underlying affidavit. An affidavit is sufficient if it establishes probable cause; that
is, if the stated facts would reasonably allow a magistrate to believe that the evidence will be found in
the stated location." *United States v. Taylor*, 716 F.2d 701, 705 (9th Cir. 1983). Courts should "give
great deference to an issuing judge's finding that probable cause supports the warrant" *United States v.
Flores*, 802 F.3d 1028, 1043 (9th Cir. 2015) citing *United States v. Grant*, 682 F.3d 827, 832 (9th Cir.
2012) and will be overturned only if it is "clearly erroneous." *United States v. Stanert*, 762 F.2d 775,
778 (9th Cir.1985).

"Probable cause determinations are 'commonsense, practical' questions, and a 'fair probability'
is less even than a preponderance of the evidence." *Flores*, 802 F.3d at 1044, quoting *United States v.
Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). "[D]ata is frequently preserved and recovered after
deletion from an electronic device, particularly when a third party like Facebook is involved." *Flores*,
802 F.3d at 1044, but also see *United States v. Artis*, 919 F.3d 1123, 1135 ("The informant's tip plus the
corroborating notifications found on Artis' phone sufficed—although barely—to establish probable
cause that Hopkins was using the targeted cell phone.")

The warrant clause of the Fourth Amendment categorically prohibits the issuance of any warrant
except one particularly describing the place to be searched and the persons or things to be seized.
*Maryland v. Garrison*, 480 U.S. 79, 84 (1987). The purpose of the particularity requirement is to prevent

general searches. *Id.* By limiting the authorization to search the specific areas and things for which there is probable cause to search, the particularity requirement ensures that the search will be carefully tailored to its justifications, and will not become a wide-ranging, exploratory search the Fourth Amendment prohibits. *Id.*

To satisfy the particularity requirement of the Fourth Amendment "a warrant must comply with two related but distinct rules. First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of "the circumstances of the case and the types of items involved…Second, it must be no broader than the probable cause on which it is based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990) quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). "Over-seizing is an accepted reality in electronic searching because 'there is no way to be sure exactly what an electronic file contains without somehow examining its contents." *Flores*, 802 F.3d at 1044-45 citing *United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1176-77 (9th Cir. 2010).

a.  **Analysis of the First Motion to Suppress (ECF No. 30)**

To establish standing to seek suppression, Mattingly relies on the "overnight guest" exception. See *Olson*, 495 U.S. 91, 98 and *Grandberry*, 730 F.3d 968. In *Grandberry*, the defendant-parolee submitted a declaration stating that the apartment was his girlfriend's and that he had stayed there overnight as an invited guest. *Id.* at 973.  I find that Detective Redsull credibly testified that he saw Mattingly on the hotel balcony on the afternoon of April 1, 2020, and again on the same balcony the morning of April 2, 2020. I find that Mattingly stayed overnight in the hotel room, so Mattingly has standing to bring this motion.

It is undisputed that the officers knew that the defendant was on parole at the time of the search given that (1) the defendant was wanted for parole violations; (2) the parole officer accompanied the detective and invoked the search clause in Mattingly's parole agreement and (3) the parole officer found

the gun. At the time of the search, the defendant was subject to a written parole condition stating that "I shall submit my person, property, place of residence, vehicle, or ***areas under my control*** to search at any time of the day or night, with or without a search warrant or with or without cause, for evidence of a crime or violation of parole by a Parole Officer or any other Peace Officer." See ECF No. 31-3 (emphasis added).

Mattingly's case differs from *Grandberry* because that case involved an overnight stay at someone's residence. This case involves the defendant staying overnight as a guest of the hotel, which was no one's residence. Mattingly, Hughes, and the other woman in the elevator were all guests of the hotel, regardless of which name was on the registration. In *Cervantes*, the Ninth Circuit held that even though Cervantes had a permanent residence elsewhere, the hotel room he was staying in was under his control. The hotel room was reserved and paid for by Cervantes' girlfriend and the two of them were staying there temporarily as co-occupants. *Cervantes*, 859 F.3d at 1183. I find that Detective Redsull and Officer Chandler had probable cause to believe that hotel room was under defendant's control. Although the hotel room was checked out to Hughes and not to Mattingly himself, Detective Redsull knew that Mattingly stayed overnight in the room checked out to her.

Both officers also saw male clothing in the room and neither of the other people with access to the room were male. I find that both officers testified credibly. I find that the Mattingly's act of locking himself in the spare room shows that he was exercising control over that room. I also find that the fact that Mattingly's clothes and his wallet with his identification were in the room, rather than on his person, is indicative of someone who has control over the room. There is nothing to show that the defendant was unaware of his parole search condition. Mattingly signed the parole agreement and agreed to this condition. The search of the hotel room was reasonable and legal. Officer Chandler invoked the search clause that Mattingly agreed to as a condition of his parole and found a gun during

that lawful search.  Detective Redsull then relied upon Officer Chandler's observations to obtain a valid search warrant.

### b.  The Second Motion to Suppress (ECF No. 34)

Detective Redsull stated in the affidavit that the Facebook account had the username "marcus.mattingly.18" and several pictures of Mattingly were on the account. See ECF No. 31-1. It was reasonable for Detective Redsull to believe that the account belonged to Mattingly because the account was in his name and included pictures of him. Detective Redsull also swore in his affidavit that Mattingly was a fugitive and that he was part of a team that helps find fugitives. Detective Redsull also stated that there was already an arrest warrant for Mattingly for a parole violation. I find that the affidavit demonstrates probable cause under the totality of the circumstances because it reveals a fair probability that evidence of Mattingly's whereabouts would be revealed via the Facebook account. The facts that Detective Redsull provided in his affidavit would reasonably allow a magistrate to believe that the evidence of his whereabouts would be found via the Facebook account.

The defendant's assertion that Detective Redsull did not include a statement that he believed the defendant was actively using the Facebook account is not well supported. In the Facebook search warrant, Detective Redsull sought electronic evidence stored on social media to help locate the defendant via the defendant's communications, including historical and prospective content. The affidavit for the search warrant states that, "[a]ffiant knows through training and experience that suspects will commonly use Facebook messenger to communicate." See Government Exhibit 2 at 000205. The prospective content included seeking IP addresses and functioned as a PEN register, which is outlined in the search warrant. *Id.* I find that there was a fair probability that Detective Redsull would find evidence of Mattingly's location via the Facebook account. Detective Redsull's affidavit supporting the warrant established probable cause to search Mattingly's Facebook account.

The affidavit is also not overbroad. The warrant allowed the government to search only the Facebook account associated with Mattingly's name and specified a specific crime. The affidavit also contained a reasonable temporal limitation (60-days prior to and following the issuance of the warrant). *Id.* at 000192. Detective Redsull specified that he was searching for information related to Mattingly's location. This temporal limitation is narrow. It significantly limited the scope of the warrant so that Detective Redsull could find clues to the defendant's location within the 120-day time limit. Detective Redsull had no way to be sure which electronic communication, within the narrow time limit, would contain clues to the defendant's location without examining its contents. The affidavit supporting the search warrant in this case is not overbroad.

ACCORDINGLY,

I RECOMMEND that both of defendant Marcus Mattingly's motions to suppress (ECF No. 30 and 34) be DENIED.

DATED this 18th day of February 2022.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE